**TIMOTHY S. DOSS**,

                Plaintiff,

v.                              **Case No. 14-cv-1100-pp**

**CLINT PEACHY, et al.,**

                Defendants.

**DECISION AND ORDER GRANTING DEFENDANTS' MOTION FOR HEARING ON EXHAUSTION OF REMEDIES (DKT. NO. 43); GRANTING DEFENDANTS' MOTION TO STAY ALL DEADLINES (DKT. NO. 45); DENYING DEFENDANTS' MOTION TO REOPEN DISCOVERY (DKT. NO. 46); DENYING PLAINTIFF'S APPLICATION FOR DISCOVERY RESOLUTION (DKT. NO. 12) AND MOTION TO COMPEL (DKT. NO. 13); DENYING PLAINTIFF'S MOTION FOR JUDGMENT AS A MATTER OF LAW (DKT. NO. 35); DENYING PLAINTIFF'S MOTION TO APPOINT COUNSEL (DKT. NO. 22); AND GRANTING PLAINTIFF'S MOTION TO WITHDRAW PROPOSED AMENDED COMPLAINT AND MOTION FOR SUMMARY JUDGMENT (DKT. NO. 31)**

On September 10, 2014, Timothy Doss, a *pro se* plaintiff who is currently incarcerated at Green Bay Correctional Institution (GBCI), filed a complaint under 42 U.S.C. §1983, alleging that his civil rights had been violated. Dkt. No. 1. On October 10, 2014, Judge J.P. Stadtmueller found that plaintiff had stated claims that defendants, including unidentified Doe defendants, had violated his Eighth and Fourteenth Amendment rights when the plaintiff was forcibly placed with a catheter in the health services unit at Dodge Correctional Institution. Dkt. No. 8. At that time, the court also allowed the plaintiff to proceed without prepaying the filing fee. *Id.* On December 29, 2014, the case

1

was reassigned to Judge Pepper. The case currently is before the court on motions by both parties, each of which the court addresses below.

A. **The Defendants' Motions Regarding Exhaustion of Administrative Remedies (Dkt. Nos. 43, 45, 46)**

On December 1, 2014, Judge Stadtmueller issued a scheduling order, requiring the parties to complete discovery by May 1, 2015, and that any party wishing to file summary judgment motions must do so by June 1, 2015. Dkt. No. 11. On May 26, 2015, nearly a month after the deadline for the close of discovery, and three business days prior to the summary judgment deadline, the defendants filed three separate motions: A motion for hearing on exhaustion of administrative remedies (Dkt. No. 43), a motion to stay all deadlines in the court's scheduling order pending resolution of the plaintiff's exhaustion of administrative remedies (Dkt. No. 45), and a motion to reopen discovery so that the defendants could depose the plaintiff on the issue of exhaustion of remedies (Dkt. No. 46).

The Prisoner Litigation Reform Act (PLRA) requires a prisoner to exhaust available administrative remedies before he may challenge the conditions of his confinement in a federal court. *Waggoner v. Lemon*, 778 F.3d 586, 588 (7th Cir. 2015) (citing 42 U.S.C. §1997e(a)). In a case where there are questions of fact regarding whether a petitioner had exhausted his administrative remedies, a court should conduct a hearing on exhaustion, and permit any discovery it deems appropriate regarding the exhaustion issue. *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008). The case should proceed to a determination on the merits only if the court determines that the petitioner has properly exhausted

2

his administrative remedies, or that the petitioner's failure to exhaust was not his fault. *Id.* If the petitioner has not exhausted his remedies, and the failure was innocent, the court may send him back to state court to do so. *Id.* If the court determines that the petitioner was at fault for his failure to exhaust, "the case is over." *Id.* If there comes a point where the court concludes that the petitioner has exhausted his remedies, "the case will proceed to pretrial discovery, and if necessary a trial, on the merits . . . ." *Id.*

In this case, the plaintiff states that on February 25, 2011, he filed at the Dodge County Correctional Institution (DCI) a grievance regarding the February 24, 2011 incident alleged in his complaint, and that he has a carbon copy of that grievance. Dkt. No. 1 at 7; Dkt. No. 20 at 4. The plaintiff alleges that no one at Dodge ever acknowledged the grievance. *Id.* The defendants respond that they have no record of the plaintiff having filed a complaint regarding this incident in the year 2011, Dkt. No. 43 at 4, but instead that the plaintiff first raised the incident to the prison's attention more than three years later, in a complaint dated May 14, 2014. *Id.* at 6. The institute complaint examiner, and subsequent reviewers, rejected the plaintiff's 2014 grievance because it had been submitted beyond the allowed time limit of fourteen days. *Id.* at 6-7.

This is a he-said/they-said situation: The plaintiff claims that he timely filed a timely grievance that went unanswered; the defendants assert that he did not file a grievance until long after the deadline for doing so had passed. The Seventh Circuit has held that district courts must resolve credibility

3

contests such as this one by holding an evidentiary hearing. *See Roberts v. Neal*, 745 F.3d 232, 234 (7th Cir. 2014). Accordingly, the court will grant the defendants' motion for a hearing on exhaustion of administrative remedies, Dkt. No. 43. The court will issue a separate notice of hearing setting a time and date for the hearing.

In light of the hearing—and the possibility that it could end the case if the court finds that the plaintiff did not exhaust his remedies—the court also will grant defendant's motion to stay all deadlines set in the court's December 1, 2014 scheduling order (Dkt. No. 11) pending resolution of the exhaustion issue. Dkt. No. 45.

The defendants also have asked that the court reopen discovery (which, according to the December 1, 2014 scheduling order, closed on May 1, 2015), so that they may depose plaintiff on the exhaustion issue. Dkt. No. 46. The defendants do not explain why they need to depose the plaintiff, other than to note that, "Due to workload demands and deadlines, counsel was only recently able to thoroughly review this file and the factual dispute regarding exhaustion of administrative remedies." *Id.* While the court is aware that counsel for the defendants is subject to a heavy case load, the defendants made this request almost a month after the discovery completion deadline had passed, and without a timely motion to extend that deadline. Further, it is not clear what the defendants would gain from deposing the plaintiff on this limited issue. The question of whether the plaintiff did nor did not file a grievance within fourteen days of the February 24, 2011 incident is a credibility determination, and it is

4

the finder of fact—the court—which makes that determination when a credibility contest arises. A deposition will not assist the court in making that determination. For that reason, the court denies the defendants' request to reopen discovery (Dkt. No. 46).

**B.** **The Plaintiff's Application for Discovery Resolution (Dkt. No. 12), Motion to Compel (Dkt. No. 13) and Motion for Judgment as a Matter of Law (Dkt. No. 35)**

In his complaint, the plaintiff alleged that five correctional officers and an on-call doctor, whose names he does not know, participated in his forced catheterization on February 24, 2011. Dkt. No. 1. On December 2, 2014—the day after Judge Stadtmueller issued the scheduling order—he filed a pleading entitled "Application for Discovery Resolution." Dkt. No. 12. While it is not entirely clear, it appears from this document that in late October, even before Judge Stadtmueller had set a discovery deadline, the plaintiff served discovery demands on the defendants, seeking the identities of the unknown defendants. *Id.* at 2. He warned the defendants that if they didn't give him the information he sought, he'd file a motion to compel and request sanctions. *Id.*

On December 4, 2014—two days after he filed his application, and likely before the defendants had received or reviewed that application—the plaintiff filed a motion to compel. Dkt. No. 13. The plaintiff went through the history of his requests to the defendants, argued that they had not provided him with the names of the unknown defendants, and asked the court to impose sanctions of $50 a day after the date of the motion, under Fed. R. Civ. P. 37. *Id.* at 3.

5

The defendants responded to the motion to compel by indicating that they had provided the plaintiff with all the information they had, but that due to issues with getting the plaintiff to file releases for his medical files, they weren't able to send him some of the records until the same time that he was being transferred to GBCI. Dkt. No. 23 at 2-3. They also indicated that they had not been able, as of the date they filed their response, to learn the names of the correctional officers who participated in the incident, but that they were looking, and hoped to find the information by January 2015. *Id.* at 4. They also noted that the deadline for completing discovery had yet to expire. *Id.*

On February 23, 2015, the plaintiff filed a motion, asking the court to award default judgment in his favor, as a sanction for the defendants' failure to provide him with the identities of the unknown defendants. Dkt. No. 35. He reminded the court that the defendants had said they'd get the information by early January 2015, but that now it was February and he still did not have it. *Id.* The defendants responded that they had produced all the identifying information they could find, after "extensive searching." Dkt. No. 26 at 1. They reported that the individuals who'd responded to the plaintiff's cell on February 24, 2011 were John Grahl, Nurse Kasia Tomczak, Clint Peachey, Harold Westphal, and Todd Worm—and that these names were reflected in the incident report that the plaintiff had had in his possession since the beginning of the litigation. *Id.* at 1-2. They indicated, after six months of litigation, that they had not been able to find any other information responsive to his request. *Id.*

In his April 2, 2015 reply to the opposition to his motion for summary judgment (a motion he seeks to withdraw, and which the court will address later in this order), the plaintiff alleged that the defendants have been giving him the runaround, providing inconsistent responses, and withholding relevant information. He likens the effort it's taken to discover this information to the pulling of teeth "from the recalcitrant mouth of [a] rabid Komodo dragon." Dkt. No. 40 at 15. In his motion to compel, the plaintiff asked the court to impose sanctions pursuant to Rule 37(B)(2)(A), including establishing facts in his favor, barring the defendants from pursuing certain claims or submitting certain evidence, striking out pleadings or part of them, imposing a monetary fine of $50 per day from the date he filed the motion, and entering a default judgment in his favor.

As an initial matter, the court notes that the plaintiff has failed to comply with the requirements of Civil Local Rule 37 of the Eastern District. That rule requires a party who files a motion to compel to file along with that motion "a written certification by the movant that, after the movant in good faith has conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action, the parties are unable to reach an accord." Because the plaintiff is incarcerated, he could not confer with counsel for the defendants by phone or in person, but he could have tried to satisfy this "meet and confer" requirement by writing a letter to the defendants' counsel. While it is not entirely clear from the record, it

7

appears that the plaintiff never made a good faith attempt to discuss his concerns with the defendants' counsel before involving the court.

Further, the events the plaintiff described in his complaint happened three and a half years before he filed the complaint. While the discovery rules are designed to make sure that parties have all the information they need to pursue or defend against lawsuits, parties also must be reasonable in their expectations of what people can and cannot remember, as well as of what documentary evidence remains over time. People's memories fade, and well-established retention policies often result in documents being destroyed in the normal course of business.

Even further, the court notes that the defendants *have* identified, by name, five individuals who responded to the plaintiff's cell on February 24: John Grahl, Nurse Kasia Tomczak, Clint Peachey, Harold Westphal and Todd Worm. Dkt. No. 26 at 1-2; Dkt. No. 37-1 at 2. They have provided the plaintiff with three names that he apparently did not have, given that neither his original nor his amended complaint mention Grahl, Westphal or Worm. In his amended complaint, the plaintiff alleges that five unknown correctional officers placed him on the exam table for the forced catheterization, and that Nurse Tomczak also was there. The defendants have produced five names; the plaintiff argues that seven people were involved on the incident. It is conceivable that Grahl, Peachey, Westphal and Worm may have been the people whom the plaintiff remembers. It is conceivable that there were only four officers and Nurse Tomczak, not five. It is conceivable that there is no

8

document, other than the incident report, reflecting how many people were present at the exam table.

The defendants also have provided the plaintiff with the name of the on-call physician involved in the incident—Dr. Tim Correll—and of a nurse practitioner who gave the order to insert the catheter—Nurse Practitioner Ellen VanderGalien. Dkt. No. 37-1 at 5.

The defendants filed their opposition to the plaintiff's motion for default judgment, along with the declaration that included their updated answers to the plaintiff's interrogatories, on March 16, 2015. Dkt. Nos. 35, 36 and 37. As of sometime around that date, then, the plaintiff has had the names of one nurse, four corrections officers, the on-call doctor and a nurse-practitioner. And he had all of that information well in advance of the expiration of the discovery deadline (May 1, 2015).

For all of these reasons, the court will deny the plaintiff's Application for Discovery Resolution (Dkt. No. 12), the plaintiff's motion to compel (Dkt. No. 13), and the plaintiff's motion for judgment as a matter of law (Dkt. No. 35).

### C.  Plaintiff's Motion to Appoint Counsel (Dkt. No. 22)

On December 22, 2014, the plaintiff filed a motion asking the court to appoint counsel to represent him. Dkt. No. 22. The plaintiff argued that his imprisonment limited his ability to litigate, that the issues in the case are complex, and that he had been transferred to a treatment facility that did not have a law library. *Id.* at 1. The plaintiff also indicated that he had made

9

several unsuccessful attempts to secure counsel on his own. *Id.* at 2. He attached to the motion copies of letters from three lawyers. Dkt. No. 22-1.

In a civil case, the court has discretion to decide whether to recruit a lawyer for someone who cannot afford one. *Navejar v. Iyola*, 718 F.3d 692, 696 (7th Cir. 2013); 28 U.S.C § 1915(e)(1); *Ray v. Wexford Health Sources, Inc.*, 706 F.3d 864, 866-67 (7th Cir. 2013). First, the person has to make a reasonable effort to hire private counsel on their own. *Pruitt v. Mote*, 503 F.3d 647, 653 (7th Cir. 2007). After a plaintiff makes that reasonable attempt to hire counsel, the court then must decide "whether the difficulty of the case – factually and legally – exceeds the particular plaintiff's capacity as a layperson to coherently present it." *Navejar*, 718 F.3d at 696 (citing *Pruitt*, 503 F.3d at 655). To decide that, the court looks, not only at a plaintiff's ability to try his case, but also at his ability to perform other "tasks that normally attend litigation," such as "evidence gathering" and "preparing and responding to motions." *Id.*

The plaintiff attached to his motion three letters from attorneys who "declined" to represent him. The court notes that only two of the letters indicate a refusal to represent the plaintiff. The third letter, from Pledl & Cohen, S.C., asks the plaintiff to send additional information so that the firm can better evaluate plaintiff's claim. The plaintiff's motion does not indicate whether he responded to this firm's request, and that letter was dated some six months before the plaintiff filed his motion. Dkt. No. 22-1 at 2. In addition, the letter speaks at length about Social Security income; it appears as if the plaintiff contacted the firm, not to ask for representation on his Eighth Amendment

10

claim, but to ask about whether he could receive SSI benefits while incarcerated. Based on these letters, the court cannot conclude that three different attorneys have refused to represent the plaintiff.

Even had the plaintiff proven that three lawyers had refused to represent him, the court would not appoint counsel for him. The plaintiff is not proceeding without assistance; he has indicated in another pleading that he "has sought and received legal assistance from . . . another prisoner more well-versed in law." Dkt. No. 31 at 1. The plaintiff's claims are not complex, and he has done a good job of explaining the facts and his legal theories for why those facts demonstrate constitutional violations. The plaintiff's filings to date are articulate, detailed and organized, and they have been sufficient—at this point in the case—to allow the court and the defendants to understand his claims. The plaintiff also has returned to GBCI, so he once again has access to a law library.

Finally, the court is not ignoring the plaintiff's argument that he is an incarcerated person with limited access to legal resources, that he is not a lawyer, and that he can't afford to hire a lawyer. Unfortunately, the vast majority of incarcerated persons who file civil rights actions—and there are many of them—are in the same situation. The court cannot appoint counsel for every single incarcerated person who asks. That is why the court must look at each plaintiff's pleadings, and the nature of each plaintiff's case, to determine whether the case is so complex that the plaintiff cannot represent himself. In

11

this case, at this point, the court determines that the plaintiff can represent himself.

The court will deny the plaintiff's motion for appointment of counsel without prejudice, so that the plaintiff may renew his request at a later date if he both demonstrates that three lawyers have refused to represent him and that his case has grown too complex for him to handle himself.

**D.  Plaintiff's Motion to Withdraw Amended Complaint and Motion for Summary Judgment (ECF No. 31)**

On December 22, 2014, the plaintiff filed an amended complaint, Dkt. No. 20, and on December 30, 2014, he filed a motion for summary judgment, Dkt. No. 25. On January 16, 2015, however, the plaintiff filed a motion asking to withdraw both filings. Dkt. 31. In this motion, the plaintiff explained that, since filing the complaint, he had obtained assistance from another inmate more well versed in law. Communication between the two had been complicated after the plaintiff's transfer to the Wisconsin Resource Center for treatment. The plaintiff stated that he had realized that he had been premature in filing the amended complaint and the motion for summary judgment, and he asked the court to let him withdraw them and give him additional time to amend his original complaint. On January 21, 2015, the defendants advised the court that they did not object to plaintiff's request to withdraw the filings. Dkt. No. 34.

The court will grant the plaintiff's motion to withdraw his amended complaint (Dkt. No. 20) and his motion for summary judgment (Dkt. No. 25).

Dkt. No. 31. The court will ask the clerk of court to note that these pleadings are deemed withdrawn.

Because the court has stayed the deadlines set in the December 1, 2014 scheduling order pending the evidentiary hearing on the plaintiff's exhaustion of administrative remedies, the court will not set a deadline for the plaintiff to file an amended complaint at this time. If the court rules in the plaintiff's favor after the evidentiary hearing, the plaintiff may again file a motion asking the court for time to amend his original complaint, and the court will consider that request request. The court reminds the plaintiff that if he chooses to seek permission to file an amended complaint, he must comply with Federal Rule of Civil Procedure 15 and Civil Local Rule 15 of the Eastern District of Wisconsin—particularly Civil Local Rule 15(b), which requires the plaintiff to "state specifically what changes are sought by the proposed amendment," and to attach the proposed amended complaint to the motion asking leave to amend. Further, the plaintiff should be aware that any amended complaint will replace the original complaint, and that he cannot incorporate any prior complaint or other pleading into the amended complaint. If the court grants the plaintiff permission to file the amended complaint, the court will then screen the complaint pursuant to 28 U.S.C. §1915A.

## **CONCLUSION**

The court **GRANTS the** defendants' motion for an evidentiary hearing on plaintiff's exhaustion of administrative remedies (Dkt. No. 43). The court will

issue a separate notice of hearing setting a date and time for the exhaustion hearing.

The court **GRANTS** the defendants' motion to stay all deadlines in the court's scheduling order pending resolution of the exhaustion hearing (Dkt. No. 45).

The court **DENIES** the defendants' motion to reopen discovery so that they may depose plaintiff on the exhaustion issue (Dkt. No. 46).

The court **DENIES** the plaintiff's application for resolution of discovery (Dkt. No. 12), **DENIES** his motion to compel (Dkt. No. 13), and **DENIES** his motion for judgment as a matter of law (Dkt. No. 35).

The court **DENIES** the plaintiff's motion to appoint counsel, without prejudice (Dkt. No. 22).

The court **GRANTS** the plaintiff's request to withdraw his amended complaint and his motion for summary judgment (Dkt. No. 31). The court will **STRIKE** plaintiff's amended complaint (Dkt. No. 20) and summary judgment motion (Dkt. No. 25).

Dated at Milwaukee this 29th day of June, 2015.

BY THE COURT:

HON. PAMELA PEPPER
United States District Judge