# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**TIMOTHY S. DOSS**,

             Plaintiff,

v.                                           **Case No. 14-cv-1100-pp**

**CLINT PEACHY, et al.,**

             Defendants.

## DECISION AND ORDER DISMISSING CASE BASED ON THE PLAINTIFF'S FAILURE TO EXHAUST AVAILABLE ADMINISTRATIVE REMEDIES

**I.    PROCEDURAL BACKGROUND**

On September 10, 2014, Timothy Doss, a *pro se* plaintiff currently incarcerated at Green Bay Correctional Institution (GBCI), filed a complaint under 42 U.S.C. §1983, alleging his civil rights had been violated. Dkt. No. 1. Judge Stadtmueller, the original judge assigned to the case, issued an order allowing the plaintiff to proceed on his Eighth and Fourteenth Amendment claims against the defendants. Dkt. No. 8 at 4.

On May 26, 2015, the defendants filed a motion requesting an evidentiary hearing on their assertion that the plaintiff had not exhausted his administrative remedies, as required by Pavey v. Conley, 544 F.3d 739 (7th Cir. 2008). On June 29, 2015, the court granted the defendants' motion for a hearing, because the Prisoner Litigation Reform Act (PLRA) requires a prisoner to exhaust available administrative remedies *before* challenging the conditions

1

of his confinement in a federal court. See Waggoner v. Lemon, 778 F.3d 586, 588 (7th Cir. 2015) (citing 42 U.S.C. §1997e(a)). The court held a hearing on August 4, 2015, with both the plaintiff and counsel for the defendants present.[1] Dkt. No. 51. For the reasons explained in this decision, the court will grant the defendants' oral request (made at the end of the evidentiary hearing) to dismiss the case based on the plaintiff's failure to exhaust his administrative remedies.

## II. FACTUAL BACKGROUND

In his complaint, the plaintiff alleged that he had an episode of sickle cell crisis on February 24, 2011, which resulted in tremendous pain. He alleged that staff at Dodge Correctional Institution (Dodge) both were deliberately indifferent to his serious medical need, and that they forcibly used a catheter without his consent to obtain a urine sample. Dkt. No.1. The complaint stated,

> I, Timothy Doss, filed a complaint at Dodge Correctional Institution on 2-24-11 & never got acknowledged. On or around 5-15-14 I got a copy of my ICRS and saw my complaint was never received. So I filed a complaint on 5-15-14. On 5-20-14 it was rejected.

Id. at 7. The plaintiff further stated, "I do have a carbon copy of my original complaint I filed initially it was never acknowledged." Id.

In their motion for an evidentiary hearing, the defendants stated, "According to plaintiff Timothy Doss's inmate complaint history report, the only offender complaint filed by Doss at Dodge in the year 2011 was on February 23, 2011, the day before the incident giving rise to this lawsuit." Dkt. No. 43 at

---

[1] The plaintiff appeared by video conference from GBCI.

4. The defendants alleged that that complaint, though unrelated to the incident that occurred on February 24, 2011, was processed according to DOC procedure. Id. at 5. The defendants asserted that the record did not show another complaint from the plaintiff until March 11, 2011—and that complaint wasn't related to the February 24, 2011 incident. Id.

### III. APPLICABLE LAW

According to the PLRA, "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. §1997e(a). Various important policy goals give rise to the rule requiring administrative exhaustion, including restricting frivolous claims, giving prison officials the opportunity to address situations internally, giving the parties the opportunity to develop the factual record, and reducing the scope of litigation. Smith v. Zachary, 255 F.3d 446, 450-51 (7th Cir. 2001).

Wisconsin Administrative Code chapter DOC §310 requires an inmate to initiate the exhaustion process by filing an offender complaint with the institution's complaint examiner. DOC §§310.07, 310.09. Absent a showing of good cause for delay, an inmate must file an offender complaint within fourteen calendar days of the event giving rise to the offender complaint. DOC §310.09(6). If a court determines that an inmate failed to complete *any* step in the exhaustion process prior to filing a lawsuit, the court must dismiss the plaintiff's complaint. Perez v. Wis. Dept. of Corrs., 182 F.3d 532, 535 (7th Cir.

3

1999) ("[A] suit filed by a prisoner before administrative remedies have been exhausted must be dismissed; the district court lacks discretion to resolve the claim on the merits."). Thus, an inmate's failure to timely file an offender complaint will be fatal to his federal lawsuit.

## II. THE PLAINTIFF'S ARGUMENT

The plaintiff testified at the evidentiary hearing that on February 25, 2011, while at Dodge, he wrote an inmate complaint about events that occurred the day before. He stated that he borrowed a piece of carbon paper from another inmate so that he could keep a copy of the inmate complaint. Because he was not free to leave his cell in Unit 9 (he was on lock-down at night), the plaintiff placed the complaint in his cell door for an officer to pick up, rather than placing the complaint in the metal lockboxes designated for inmate complaints. He stated that he kept a copy, and put the other copy in the door for the third shift to pick up. The plaintiff told the court that he did not know what happened to his complaint after he placed it in his cell door. He also stated that he did not know the name of the inmate from whom he borrowed the carbon paper. The plaintiff told the court that, although he tried, he was unable to locate his prior cell mate, whom he believes would have corroborated his statements that he wrote an inmate complaint that day and placed it in his cell door.

The plaintiff testified that he received no acknowledgment from the institution that his complaint had been received. He told the court that a few months after putting the complaint in the door, he was misinformed by another

4

inmate that it was too late to pursue his inmate complaint, so the plaintiff let the matter drop.

On March 8, 2011, the plaintiff was transferred to Oshkosh Correctional Institution, and then to GBCI. Once he got to GBCI, he spoke to other inmates who were more knowledgeable about the law. They informed the plaintiff that he still could pursue a federal lawsuit because the institution had failed to acknowledge his original complaint. In other words, GBCI inmates instructed the plaintiff that he could proceed with his claim in federal court because the failure to exhaust his original complaint was not his fault—it was the fault of the institution for failing to process his inmate complaint.

On May 14, 2015, after receiving this advice, the plaintiff filed an inmate complaint, more than three years after the events had occurred. The plaintiff followed all of the steps in the grievance procedure as set forth in the Wisconsin Administrative Code chapter DOC §310.

The plaintiff produced four exhibits at the hearing. Exhibit A was a document entitled, "Offender Complaint." It was a handwritten complaint, and in the "date of incident" box was written "2/24/11." The plaintiff's signature appeared at the bottom, and in the "date signed" box was written "2-25-11." The handwritten content of the complaint described the incident on February 24, 2011, the staff's reaction to his pain, and how certain members of the Dodge staff took a urine sample from him over his objection. There is, at the top, right-hand corner of the complaint, a box titled, "To be filled in by ICE only." The box contains three fields—one for the "DOC complaint file number,"

5

one for the "date complaint received," and one for "code number." All of these fields are blank on Exhibit A. The plaintiff filed Exhibit A on July 23, 2015, in preparation of the hearing.

The plaintiff also presented Exhibit B, a July 29, 2014 letter from DOC complaint examiner Welcome Rose to the plaintiff. Examiner Rose acknowledged that she received a July 8, 2014 letter from the plaintiff, in which he described the February 24, 2011 incident. Examiner Rose then stated, "I have searched the Inmate Complaint Review System and I note your concerns had been raised in an inmate complaint earlier this year (Complaint Number GBCI-2014-9575). The complaint had been found to be late and rejected for that reason."

The plaintiff presented Exhibit C, an April 15, 2015 letter from him to Dodge Institution Complaint Examiner Joanne Bovee, in which he asked for copies of any and all offender complaints he'd filed while at Dodge and the resulting decisions. He also presented Exhibit D, a May 8, 2015 Record Request Response from record custodian Karen Parenteau, in which she indicated in response to the plaintiff's April 15, 2015 request, "GBCI will be providing you with these copies directly."

At the end of the hearing, the plaintiff acknowledged that he had no evidence to support his claim that he first filed an inmate complaint the day after the February 24, 2011 incident, but he pointed out that the defendants had no direct evidence that he did *not* timely file a grievance. The plaintiff testified that he was telling the truth and that, while he did not present the

6

copy of the inmate complaint until after he filed his lawsuit, he had had the inmate complaint among his papers all along. He indicated that the reason he never had produced the carbon copy to which he made reference in his complaint was because he had been in segregation at GBCI, with no access to his papers. He stated that he believed that as long as he had the original complaint somewhere in his papers, he knew he could demonstrate that he'd exhausted his remedies. He stated that he didn't mention having the carbon copy until he actually obtained possession of his papers, and told the court that he hadn't wanted anything to happen to the complaint.

## III. THE DEFENDANTS' ARGUMENT

The defendants stated in their motion for a hearing that on May 15, 2014, a complaint examiner at Dodge acknowledged receipt of offender complaint #GBCI-2014-9575, dated May 14, 2014. Dkt. No. 43 at ¶23. In that complaint, the plaintiff had alleged that a sample had been taken from him without his consent. Id. at ¶22. The defendants indicated that "Doss's Inmate History Report does not show any complaints regarding the February 24, 2011 incident until 2014." Id. at ¶21. They explained that, because that complaint was filed more than three years after the events, the institution followed DOC policy by rejecting the complaint as untimely. Id. at ¶23.

At the hearing, complaint examiner Joanne Bovee testified. She explained that an inmate files a complaint by either giving it to an officer or putting it in one of the lockboxes on the various units. She explained that in February 2011, the plaintiff was in Unit 9, and that there was a locked box on

7

that unit. She testified that even locked-down inmates had access to the box when going to and from meals, recreation and religious services. She testified that the third-shift officer on Unit 9 would have collected any complaints that were filed, taken them to the mail room, and put them in the complaint examiner's mail box (the "ICE" box, for Institute Complaint Examiner). Once an examiner receives a complaint from the mail box, he or she begins an investigation. The complaint is entered into the inmate tracking system, and the inmate gets a receipt. The ICE has five days to send the inmate the receipt. Examiner Bovee testified that all complaints are scanned into the system, and maintained for eleven years.

Examiner Bovee also testified that sometimes examiners will send complaints back to inmates—because they are filed on the wrong form, or they are unsigned, or they are inflammatory, or they contain more than one issue. Sometimes they are sent back if they don't comply with some other provision of the DOC code. For those complaints that aren't sent back, the examiner types up a recommendation, which is then referred to the Health Services Unit director for review. The examiner's recommendation may be affirmed, dismissed, rejected, or affirmed with modifications.

The defendants produced several documents in support of the following arguments:

- The plaintiff's offender complaint history was extensive. It dated back to 2003, indicating that the plaintiff was well acquainted with the exhaustion procedure. Dkt. No. 44-1; Ex. 1007.

8

- The plaintiff had filed several complaints after February 25, 2011 which were unrelated to the events in this lawsuit. In one such complaint, in November 2013, the plaintiff stated that he had written "numerous" complaints and "<u>never</u>" had one come up missing. Ex. 1013 (emphasis in exhibit).

- In the May 14, 2014 complaint filed at GBCI regarding the February 2011 incident, the plaintiff stated, "Due to hospitalization & lost files this complaint was delayed." Dkt. No 44-3; Ex. 1009 at 7. The plaintiff did not mention that he had previously attempted to timely file an inmate complaint, nor did he mention that he had a copy of the previously filed inmate complaint.

- On May 28, 2014, the plaintiff appealed the rejected May 14, 2014 inmate complaint. In the appeal, the plaintiff stated, "Due to my paperwork getting lost and hospitalization, I didn't file my complaint until later. . . . The Department shouldn't exclude handicap or impaired inmate of filing a late complaint." Dkt. No. 44-4; Ex. 1010 at 1. Again, the plaintiff did not mention that he had previously attempted to timely file an inmate complaint, nor did he mention that he had a copy of the previously filed inmate complaint.

- The plaintiff did not mention that he had a copy of an unacknowledged, timely filed complaint until *after* he filed his federal lawsuit.

The defendants argued at the hearing that all of these facts demonstrated that the plaintiff's claim that he tried to file a complaint on February 25, 2011 by putting it in the door to his cell was not credible. They argued that the DOC had no record of the complaint, that the plaintiff would have had the opportunity to put the complaint in a lockbox even while on lockdown status, that examiner Bovee would have been the one to process it and she did not, that the plaintiff didn't mention the alleged existence of a February 25, 2011 complaint until 2014, that the plaintiff provided no property records to show that he'd not had access to his papers, and that he did not mention a carbon copy until he filed the federal lawsuit. Finally, the defendants

9

argued that if the court were to allow the plaintiff to continue with this suit, it would effectively gut the requirements of the PLRA—such a decision would mean that all an inmate would have to do to sidestep the exhaustion requirement is fill out a complaint form, backdate it and claim that it had been lost or misplaced by the institution.

**IV.   ANALYSIS**

Based on the testimony and evidence presented at the August 4, 2015 hearing, the court finds that the plaintiff's assertion that he filed a complaint on February 25, 2011 is not supported by the evidence.

First, the evidence supports the defendants' position that the plaintiff, whose complaint history extends back to 2003, was well acquainted with the inmate complaint procedure. In 2013, within two weeks of filing an inmate complaint that went unacknowledged by the institution, the plaintiff challenged the institution's silence by stating that he had written "numerous" complaints and "<u>never</u>" had one come up missing. The plaintiff's actions in that situation, and the frequency with which he has filed inmate complaints over the years, demonstrate that the plaintiff knew that the institution was required to acknowledge inmate complaints within a reasonable timeframe. It is difficult for the court to believe that in a circumstance in which the plaintiff believed that the defendants removed bodily fluids against his will, the plaintiff would not have reacted almost immediately when he failed to receive confirmation that he'd filed his complaint.

Second, the court finds it hard to believe that a plaintiff as experienced as this one would file an inmate complaint three years after the incident and neglect to emphasize that he had attempted to timely file an inmate complaint, and that he had a copy of the complaint to prove it. The plaintiff stated that he referenced "lost records" in his 2014 inmate complaint and appeal, and argued that by that he was referring to the misplaced offender complaint. This argument strains belief; the plaintiff knows how to say, "I have a copy of my complaint—it's in my things and I don't have them right now." He did not say that. The plaintiff's filings in this matter have been extensive; he is articulate, detailed, and organized. He has laid out his arguments in a manner that is easy to understand, and he has supported his position with facts and case law. The plaintiff is very good at advocating for himself, and the court does not believe that he would have overlooked such an important detail when filing his inmate complaint and the subsequent appeal.

Third, the first time the plaintiff made reference to the carbon copy of the February 25, 2011 inmate complaint was when he filed his federal lawsuit in September 2014. Until July 23, 2015—a little over a week before the evidentiary hearing on exhaustion—the plaintiff never had produced the carbon copy of the complaint. Despite the plaintiff's vivid description of a dramatic and intrusive event, and despite his knowledge that he needed a copy of his inmate complaint in order to proceed in his federal case, he did not produce Exhibit A until four and a half years after the incident, and until ten months after he filed his complaint. The document he did produce is pristine—the handwriting

is clear, dark and precise; there are no smudges; there are no wrinkle marks or tears. If, in fact, the plaintiff had this document for four and a half years, and it traveled to two different federal facilities, it stands to reason that the document would show some signs of age, wear and tear. Exhibit A does not.

The court does not believe that Exhibit A is a carbon copy created four and a half years ago. The court believes it more likely that the plaintiff realized, after he filed his lawsuit, that he had no proof that he'd timely filed a complaint, and so he created Exhibit A after the fact.

Other than the plaintiff's unsupported testimony—which the court does not find credible—there is no evidence to indicate that the plaintiff filed an inmate complaint on February 25, 2011, or any time prior to March 2014. The evidence rather indicates that the plaintiff may have created an inmate complaint after he filed this lawsuit, and backdated it, in an attempt to circumvent the exhaustion requirement. As the defendants argue, if this or any other court allowed a lawsuit to proceed under these circumstances, any inmate could get around the exhaustion requirement by backdating a complaint and claiming that it got lost somewhere between his cell and the complaint examiner's desk. The court will not encourage such an option for inmates.

The evidence demonstrates that the plaintiff filed his first and only inmate complaint about the events alleged in this lawsuit more than three years after the events occurred. The plaintiff did not timely file his inmate complaint, and he has failed to exhaust the available administrative remedies.

The plaintiff's failure to exhaust before filing his lawsuit in federal court is fatal to his claims, and the court must dismiss the plaintiff's complaint.

## V. CONCLUSION

For the reasons discussed above, the court **DISMISSES** this case. The clerk will enter judgment accordingly.

This order, and the judgment which will follow, are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30 days** of the entry of judgment. See Federal Rule of Appellate Procedure 3, 4. The court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. See Federal Rule of Appellate Procedure 4(a)(5)(A).

Under certain circumstances, a party may ask the court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e), or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. See Federal Rule of Civil Procedure 6(b)(2).

The court expects parties to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

13

Case 2:14-cv-01100-PP   Filed 10/07/15   Page 13 of 14   Document 54

Dated at Milwaukee this 7th day of October, 2015.

BY THE COURT:

_____
HON. PAMELA PEPPER
United States District Judge